## STATE EX REL. DUCK HUNTERS ASSOCIATION OF MINNESOTA v. WAYNE H. OLSON.

123 N. W. (2d) 679.

September 27, 1963—No. 39,242.

*Mandt Torrison, Bundlie, Kelley & Torrison,* and *Carl O. Wegner,* for relator.

*Walter F. Mondale,* Attorney General, and *Frank J. Murray,* Deputy Attorney General, for respondent.

PER CURIAM.

This matter is here on a writ of prohibition seeking to restrain the commissioner of conservation of the State of Minnesota from enforcing an order limiting the number of migratory birds that may be taken and possessed during the season of 1963 below that authorized by Federal regulation.

The facts are not in dispute. By order promulgated by the Secretary of the Interior of the United States, the taking of four ducks per day and the possession of eight are permitted during the 1963 hunting season, subject to further restrictions as to species. By order promulgated by the commis-

---

the indictment; provided, if the defendant waives the reading of the indictment, it need not be read to him."

[5] § 610.29.

sioner of conservation of the State of Minnesota on August 30, 1963, the taking of no more than three ducks per day and the possession of no more than six are permitted, subject to the same restrictions as to species. The question before us is whether the commissioner of conservation has authority to limit the taking and possession of ducks at less than that authorized by Federal authority.

The paramount authority for the regulation of taking and possession of migratory birds rests with the Secretary of the Interior of the United States under 16 USCA, §§ 703 to 711, enacted to give effect to the terms of conventions between the United States and Great Britain for the protection of migratory birds, concluded on August 16, 1916, and the United States and the United Mexican States concluded February 7, 1936. The crucial portions of the Federal statutes are § 703, which reads:

"Unless and except as permitted by regulations made as hereinafter provided in sections 703-711 of this title, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, exported, or imported, deliver for transportation, transport or cause to be transported, carry or cause to be carried, or receive for shipment, transportation, carriage, or export, any migratory bird, or any part, nest, or egg of any such birds, included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702), and the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936,"

and § 708, reading as follows:

"Nothing in sections 703-711 of this title shall be construed to prevent the several States and Territories from making or enforcing laws or regulations not inconsistent with the provisions of said conventions or of said sections, or from making or enforcing laws or regulations which shall give further protection to migratory birds, their nests, and eggs, if such laws or regulations do not extend the open seasons for such birds beyond the dates approved by the President in accordance with section 704 of this title."

Section 704 authorizes the Secretary of the Interior from time to time to adopt suitable regulations, which become effective when approved by the President.

There is no question but that the legislature of Minnesota could have conferred authority on the commissioner of conservation to reduce the take and possession limits of ducks under § 708 of the Federal statute. The question before us is: Has it done so?

The legislature of the State of Minnesota has conferred upon the commissioner of conservation quite broad powers for the protection of wild animals.[1] Minn. St. 97.48, subd. 1, as far as pertinent here, reads:

"The commissioner may extend protection to any species of wild animal in addition to that accorded by chapters 97 to 102, by further limiting or closing open seasons, areas of the state, or by reducing limits with respect to any or all areas of the state, whenever he finds such action necessary to guard against undue depletion or extinction, or to promote the propagation and reproduction of such animals, * * *."

Section 97.48, subd. 8, reads:

"The commissioner shall do all things deemed by him desirable in the preservation, protection and propagation in their natural state, and artificially, of all desirable species of wild animals."

Section 100.27, subd. 6, dealing with migratory birds, reads:

"All migratory game birds, excepting mourning doves, may be taken and possessed whenever and so long as the taking or possession is not prohibited by federal laws or regulations, subject, however, to all requirements of chapters 97 to 102, provided that it shall be unlawful to take any migratory game birds at any time in violation of any federal law or regulation. Mourning doves shall not be taken and possessed in the state."

Petitioner contends that under the latter provision the legislature, while it could have done so, has not conferred authority upon the commissioner of conservation to reduce the number of migratory birds which may be taken or possessed below that authorized by Federal regulation. It contends that § 100.27, subd. 6, being a specific provision relating to migratory birds, takes precedence over the general provisions dealing with other wild animals and birds. The commissioner, on the other hand, contends that § 100.27, subd. 6, expressly recognizes the overall authority conferred upon the commissioner by c. 97 to reduce the number of birds, including migratory birds, which may be taken or possessed when in his opinion it is deemed necessary to do so in order to prevent the depletion or extinction of such birds.

If the clause in § 100.27, subd. 6, "subject, however, to all requirements of chapters 97 to 102," had read "subject, however, to all provisions of chapters 97 to 102," we assume that the commissioner's position would be unassailable. The word "requirements" is more restrictive and does render the statute open to two possible constructions, namely, that advanced by

---

[1] It is conceded that migratory birds are included within the definition "wild animals."

petitioner and that advanced by the commissioner. We conclude, however, that in all probability the legislature intended that the commissioner should have the authority to reduce the number of migratory birds that may be taken or possessed, as well as other game birds and animals, when it becomes necessary to do so to avoid the depletion or extinction of such species. If that were not true, it would hardly have been necessary to refer to c. 97 in the section dealing with migratory birds at all. In any event, if we are to err in our determination of legislative intent, we prefer to err on the side of conservation rather than on the side of depletion of existing migratory birds, leaving it to the legislature to clarify the meaning of the language it has used.

In view of our determination of the main issue, we need not pass on other issues raised by the commissioner. The alternative writ is discharged and a peremptory writ denied.